## N. EMERY et a. Executors, plaintiffs in error, *vs.* The JUDGE OF PROBATE.

Where a testator, after divers legacies, bequeathed and devised to his brother
certain real estate, and personal property of certain descriptions, " and all
" my other estate, real, personal, and mixed, not otherwise disposed of, on
" the condition following, that is to say—The money, and bank and insur-
" ance stock, or public stock of any kind, remaining in his hands after all
" payments herein provided for shall have been made, shall be kept separate
" and distinct from his other estate, and the interest or income only taken
" to his use, the principal sum being intended for and given to his children,
" to be distributed among them after his decease, in such proportion as he
" may direct,"—and made the residuary legatee executor—*Held*, that this
legacy was not technically upon a condition that the legatee should keep the
money and stocks separate and take only the interest, or forfeit his legacy ;
but that it must be construed as if the testator had devised the residue *in*
*manner following*, &c. ; and that the legatee therefore took an absolute
estate in all the residue, except the money and stocks. *Held* farther, that
the bequest of the money and stocks to the children would take effect, and
they take in equal portions, if the residuary legatee made no apportionment
in his lifetime ; that the heirs had no contingent interest in the estate—and
that a bond by the residuary legatee to pay the debts and legacies was valid.

ERROR brought to reverse a judgment of the court of com-
mon pleas, for the county of Rockingham, March term,
1833 ; rendered in an action, in which the Judge of Probate
was plaintiff, and said Emery and others, executors of the
will of John Taylor Gilman, were defendants ; founded
upon a bond executed by Nathaniel Gilman as principal,
and said John Taylor Gilman and John Rogers as sureties,
to Nathaniel Rogers, Esq. judge of probate for said county ;
with a condition that said Nathaniel Gilman, who had been
nominated and allowed to be executor of the last will of
Nicholas Gilman, should well and truly pay all debts due
from said testator at the time of his decease, and all charges
of his funeral, and the legacies and bequests given in and
by said will and testament ; and should in all things faith-
fully discharge said trust of executor of said will, agreeably

to the tenor and effect of the same, and the rules and directions of law relative to the duty of said office and trust.

It appeared from the proceedings in the court below, that on the 9th of September, 1811, Nicholas Gilman made his last will, in which among other things he gave to his brother, J. T. Gilman, certain lands; "also the use of twenty-five "thousand dollars during his life, which sum is to be kept "unconnected with his other estate, and after his decease to "be divided among his surviving children or grand-children, "in such proportion as he may direct": To his sister, Elizabeth Gilman, certain lands—also "the interest of ten "thousand dollars, to be paid annually during her life, which "ten thousand dollars shall be retained in the hands of my "executors during the life of my said sister, and at her "decease shall be equally divided among her surviving children, unless for good considerations she shall by her will "make a different distribution of said ten thousand dollars "among them."

The will also gave the sum of one thousand dollars for the purpose of making a fence around the east end and front of the new meeting-house in Exeter, provided an union of the upper and lower parishes, so called, should take place within the lifetime of either of his executors, and not otherwise:

To his brother, Nathaniel Gilman, certain real estate; "also my carriages, trunks, desks, books, maps, guns, swords, "pistols, papers, and wearing apparel, and all my other "estate, real and personal and mixed, not otherwise disposed, "on the condition following, that is to say: The money and "bank and insurance stock, or public stock of any kind, re-"maining in his hands after all payments herein provided "for shall have been made, shall be kept separate and dis-"tinct from his other estate, and the interest or income only "taken to his use, the principal sum being intended for and "given to his children, to be distributed among them after "his decease, in such proportion as he may direct."

The will then appointed J. T. Gilman and Nathaniel Gilman executors.

J. T. Gilman declines accepting the trust, and thereupon the will was offered for probate by Nathaniel Gilman, as executor—and being approved and allowed, he, with J. T. Gilman and J. Rogers as sureties, executed the bond in question.

The action was brought to recover the arrears of the annuity payable to Elizabeth Gilman, which it was averred in the pleading had been assented to by said N. Gilman, and paid by him for the term of fifteen years.

The original defendants objected, that the judge of probate is in no case authorized to take a bond from an executor for the payment of the debts and legacies, unless the executor is residuary legatee absolutely; and that by the will of said Nicholas the residuum of his estate was bequeathed and devised to said Nathaniel Gilman on condition that he should keep the money and bank and other stock separate from his own estate, and take only the interest or income thereof to his own use; and for this reason they contended that the bond in this case was wholly void.

The court overruled the objection, and judgment having been rendered for the judge of probate, the defendants brought this writ of error to reverse that judgment.

The error assigned was, that as it appeared by the will of said Nicholas Gilman that said Nathaniel Gilman, was not residuary legatee, the supposed bond upon which said suit was commenced was not authorized either by statute or common law, and ought to have been adjudged wholly void.

*G. Sullivan*, for the plaintiff in error. A bond for the payment of debts and legacies can only be given by a residuary legatee, and Nathaniel Gilman was not residuary legatee within the meaning of the statute.

When the taking of the residue depends upon a condition, such bond cannot be executed, whether the condition

be precedent or subsequent. The devise of the residuum must be absolute to authorize such bond. 5 *Pick.* 337, *Clarke* vs. *Tufts ;* 16 *Mass.* 179, *Thompson* vs. *Brown.*

Where the heirs have an interest the bond should protect that interest.

It is clear that the property is given to Nathaniel Gilman on condition. 1 *Swin.* 390 ; 2 *Vernon* 333, *Cary* vs. *Bertie ;* 1 *Salk.* 231, *Bertie* vs. *Falkland.*

When a life estate is devised to one, and the remainder to another, the first may use the chattel at his pleasure. 1 *Rob. on Wills* 378 ; 2 *Atk.* 217, *Marshall* vs. *Blew.* He is not held in such case to give bond. 5 *N. H. R.* 326, *Weeks* vs. *Weeks.*

As the testator did not require Nathaniel Gilman to give security that the property should be forthcoming at his decease, as he might have done, he made his right to the residue of the estate depend upon these conditions : that he should keep the property devised separate from his own, and that he should take no more than the interest or income of the money and stocks.

Where the statute prescribes a mode in which a bond is to be given, if there is any departure it is not good as a statutory bond. 7 *Mass.* 98, *Clapp* vs. *Cofran ;* 15 *Mass.* 276, *Clapp* vs. *Hayward.*

The bond in this case is not good, either under the statute, or at common law.

The giving of a bond in the form prescribed by law is a requisite to authorize the executor to act, and where divers persons are appointed executors, " none shall intermeddle and act as such but those who give bond as aforesaid." *N. H. Laws (ed'n of* 1815) 200.

The principles adopted by the Supreme Court of the United States, in the case of the *Bank* vs. *Dandridge,* 12 *Wheat.* 64, are strongly in favor of our defence. The question was whether Dandridge was cashier of the branch

Emery et a.
*vs.*
Judge Probate.

established at Richmond. The act creating the bank provided "that the cashier, before he entered on the duties of "his office, shall be required to give bond, with two or "more sureties, to the satisfaction of the directors," &c. Chief Justice Marshall held that this provision of the act was a condition precedent, and must be complied with before Dandridge could be considered as cashier; but the majority of the court held that the provision was merely directory. The whole court admitted that if the act made the approval of the bond by the directors a condition precedent, the condition must have been complied with before he could be regarded as cashier.

If this bond is not given in conformity to the statute it cannot be considered as a probate bond. 12 *Mass.* 367, *Thomas, judge,* vs. *White.*

A bond given to the judge of probate, if not a statutory bond, would not go to his successors, even if it might be good at common law. 2 *N. H. R.* 39, *Sumner* vs. *Steward.* And no action can be maintained on a bond to the judge of probate, by a successor, unless it be good as a statutory bond. 14 *Mass.* 451, *White, judge,* vs. *Quarles.*

It may be said that this bond would go to the representatives of judge Rogers, as trustees of the creditors and legatees, but a judge of probate has no power by law to take a bond from an executor in such form as to make himself in his private capacity, and his representatives, trustees of the creditors and legatees of the testator. If he had power to do this great difficulties would arise, and great injustice be done.

If this bond is not good under the statute it cannot be good at common law, because it is against the express provision of the statute. The statute provides that no person named as executor in any will shall intermeddle with the estate, or act as executor, unless he gives such a bond as the statute directs. The condition of the present bond provides that N. Gilman shall do every act that an executor by law

can do, while the statute declares that he shall not do a single act, as executor, until he has given a bond in the form which the statute directs. The bond being that he shall do what the statute forbids, it is void.

An obligation containing several covenants or conditions, some of which are against the provisions of the statute, and others good, is void for the whole. *Moor* 856, *Norton* vs. *Simes ;* 1 *Sel. N. Prius* 413, *Tit. Debt ; Cro. Eliz.* 529.

An officer cannot take a bond to himself variant from the statute, although one may be good to the party. 2 *Saund.* 59, *b ;* 5 *Mass.* 314 ; 7 *Mass.* 98.

If the bond in this case is binding on the principal, at common law, it is not binding on the sureties. 12 *Wheaton* 89.

Sureties in an official bond are responsible only for the official acts or neglects of their principal. Here Nathaniel Gilman was not authorized to act as executor, and could not lawfully do any act as such. The letter testamentary was void. 11 *Mass.* 513, *Smith* vs. *Rice ;* 9 *Mass.* 543 ; 5 *Pick.* 20, *Holyoke* vs. *Haskins ;* 9 *ditto* 254 ; 5 *Pick.* 25, *Toller on Exrs.* 120. The surety therefore is not responsible.

The surety is not estopped to say that Nathaniel Gilman was not executor. The recital in the bond is only that he was appointed ; and if it had been stated in the condition of the bond in express terms that he was qualified to act as executor, this would not prevent the plaintiffs from denying it. 2 *Pick.* 24, *Wood, judge,* vs. *Washburn ;* 17 *Mass.* 591, *Bean* vs. *Parker.*

*Bartlett,* for the defendant in error. There is no duty in this bond that the judge of probate might not lawfully require of the executor.

If he had no right to require of him a bond to pay debts and legacies, he had a right to require a bond with a condition that he should in all things faithfully discharge the

Emery et a.
*vs.*
Judge Probate.
trust of executor, and that covers the whole—or if not the judge may have taken other bond.

But the words, "*on the condition following*," are not to be taken in a technical sense. The intention is to govern. 8 *Petersdorff's Abr.* 126; 2 *Vent.* 231; 2 *Wils.* 322, *Roe* vs. *Grew*; 2 *Burrows* 1112, *Doe* vs. *Larning*; 2 *Chitty's Eq. Dig.* 1364; 4 *Kent's Com.* 521; 1 *N. H. R.* 217, *Erickson* vs. *Willard.*

What was the intention of the clause? There was certainly no want of confidence, on the part of the testator, in the executor and residuary legatee. There is an important legacy to his children, and he was to direct the apportionment of it among them.

The intention to give to the children cannot be carried into effect if this is conditional.

It could not have been the intention of the testator that there should be a forfeiture in any event for the benefit of his heirs. He evidently meant to make a final disposition of his estate. 10 *Pick.* 306, *Brigham* vs. *Shattuck; ditto* 463, *Clapp* vs. *Stoughton*; 8 *Pick.* 478, *Humes* vs. *Wood*; 7 *Bingham* 664, *Wilce* vs. *Wilce.*

*Sullivan*, in reply. The natural import and meaning of the residuary clause in the will is, that the bequest was technically on condition; and it is evident that the testator must have so intended, not only from the words of this clause, but from other parts of the will. By the will the use of a sum of money is given to John Taylor Gilman during his life, which sum is to be kept unconnected with his other estate, and after his decease to be divided among his surviving children or grandchildren, in such proportion as he may direct. Nothing is here said of any condition, nor is it mentioned in any other part of the will, except in the residuary clause.

What is there then on the face of the will amounting almost to demonstration, or even to lead the court to sup-

pose, that the testator had a meaning different from the words ?

It has been suggested that if this clause is conditional the children of Nathaniel Gilman could not take, and that what was intended for them would go to the heirs ; but this is not so.   The devise to the children is absolute, and if Nathaniel Gilman did not comply with the condition he forfeited only his interest in the residue.

The limitation over to the children of N. Gilman is good by way of executory devise—not by way of remainder. They so take.    1 *Rob. on Wills* 377 ; 1 *Swin.* 256 ; 10 *Co.* 46 ; *Fearne on Ex. Dev.* 56.

An executory devise cannot be defeated by him who takes the first estate.    *Fearne* 51 ; *Cro. Jas.* 590, *Pells* vs. *Brown* ; 1 *Salk.* 229, *Scattergood* vs. *Edge* ; 10 *Johns.* 19, *Jackson* vs. *Bull* ;  16 *ditto* 537, *Jackson* vs. *Robins.*

If they took by way of remainder, it is as vested remainder, and could not be defeated.    1 *Taunt.* 289, *Morgan* vs. *Surman* ; 1 *Ves. Jr.* 149, *Hockley* vs. *Mawbey* ; 5 *ditto* 501, *Lord Douglas* vs. *Chalmer* ; 5 *ditto* 744, *Reade* vs. *Reade.*

If there was a forfeiture of Nathaniel Gilman's interest, he, being executor, might  have a right  to hold that part of the estate in trust for the children, and pay over the interest.

PARKER, J. delivered the opinion.    The bond in this case was executed in 1814, and the estate of Nicholas Gilman, or that portion of it embraced in the residuary clause, has been from that time to the present held by the residuary legatee, under the will, probably without any inventory or account rendered, upon the supposition that the rights of all who  were entitled to require a bond were well secured by the obligation now before us.

The action which is the foundation of the present case was brought to recover the arrears of an annuity, which the executor and residuary legatee paid for fifteen years, as it is

averred and admitted in the pleadings, in pursuance of the condition of the bond to pay debts and legacies.

It is now, after such a lapse of time—after the estate has much of it perhaps changed owners—after some part of it must have perished by natural decay, and when possibly but a small portion, if any, of it exists in the same state that it was at the decease of the testator,—that an objection is taken that the bond thus given is wholly void, and of no force to secure any thing which was intended ;—and the result of the objection, if sustained, would be to render nugatory all that has been done ; and as our statute provides that the executor shall not intermeddle with the estate until he has given bond, Nathaniel Gilman, who has acted as rightful executor, must in such case be deemed an executor in his own wrong, an administration must be granted, an inventory taken of what can be found, in such condition as it may exist, and proceedings be had to settle what for twenty years has been supposed to be settled.

Still, if by the plain and positive provisions of law this instrument was void in its creation, we must so hold it, without regard to the consequences which would follow that decision.

It is argued that the bond is invalid because, as is alleged, Nathaniel Gilman was not residuary legatee absolutely, but only upon condition—that the heirs at law have a possible interest—that the bond furnishes no protection of their rights—and that a bond of this nature, therefore, was not authorized by law.

Whether the heirs have a contingent interest or not depends upon the construction to be given to the residuary clause in the will.

Upon this matter the law is well settled. The court is bound to made such a construction as will make good the plain intentions of the testator, provided there are words in the will for it, or it can be done consistently with the rules

of law. 1 *Ves. Sen'r*, 422 ; 3 *Atk.* 318 ; 1 *Wils.* 106 ; 1 N. *H. R.* 427.

Emery et a.<br>*vs.*<br>Judge Probate.

The allegation that Nathaniel Gilman is not residuary legatee, absolutely, is founded on an erroneous construction of the terms of the will. After giving him certain real estate, the will gives him "also my carriages, trunks, desks, "books, maps, guns, swords, pistols, papers and wearing "apparel, and all my other estate, real, personal and mixed, "not otherwise disposed of, on the condition following, that "is to say—The money and bank and insurance stock, or "public stock of any kind, remaining in his hands after all "payments herein provided for shall have been made, shall "be kept separate and distinct from his other estate, and the "interest or income only taken to his use, the principal sum "being intended for and given to his children, to be distrib- "uted among them after his decease, in such proportion as "he may direct."

All the residue of the estate, then, except the money and stocks, was to be his own. By money must have been intended the money on hand, or to be collected from debts, as there is no provision that he was to sell the carriages, trunks, &c. or any of the personal property.

It is said that this whole devise was upon condition, and so is the phrase in the will ; but what was the meaning of the testator in the use of this term ? Was it if he failed to keep the money and stocks separate, and to take only the income, that all the property comprehended in the residuary clause should be forfeited.

It certainly was not upon a condition precedent, because as to all the residue except the money and stocks he was to come into possession at once as the owner ; and there is nothing in the whole will, except this word "*condition*," to show that any forfeiture was intended at any time.

If there was any condition intended it must be a condition subsequent.

But taking the whole language of the will together, could that have been the intention?

Much of the property thus bequeathed to Nathaniel Gilman for his own use, would probably wear out and be consumed. Was it intended that this should be forfeited by a subsequent neglect to keep the money and stock separate, or by using a part of the principal? If so, would the forfeiture relate back, and the legacy be void *ab initio* by the subsequent nonperformance?

Again—among the articles enumerated in the residuary clause, are guns, swords, pistols, books, papers, and wearing apparel. Is there any reason for a belief that the testator intended to give articles of this character upon a technical condition, that the right and possession should be forfeited by any subsequent neglect on the part of one who evidently possessed his full confidence? If Nathaniel Gilman failed to keep the money and stocks separate, and to take only the income, this might not be discovered until his decease; and was there in such case a forfeiture intended of the guns, papers, and wearing apparel, for the benefit of the heirs, of whom he himself is understood to have been one.

If this clause in the will constitutes a technical condition, it might well admit of question whether that condition does not include the real estate devised to Nathaniel Gilman. Was it intended that this also should be subject to forfeiture?

We are of opinion that no forfeiture could have been intended, because the term used does not necessarily imply such intention; the testator evidently intended to dispose of his whole estate, and he did not provide in terms that a forfeiture should accrue by reason of any neglect, or make any bequest or limitation over upon any such contingency; because property perishable in its nature, and of a character not likely to be included in a technical condition, is given to the executor for his own use—and because the money and stocks, which are to be distributed among the children

of Nathaniel Gilman, on his decease, in such proportion as Emery et a. he may direct, are equally within the terms of the clause *vs.* Judge Probate. alleged to be conditional as the property which he was to —————— take as his own.

Was it intended, if Nathaniel Gilman failed to keep the money and stocks separate from his own estate, that they should also be forfeited, and instead of going to the children, on his decease, go to the heirs?

There can hardly be a reasonable doubt as to the intention of the testator in this respect. The term condition was not intended to make a technical condition, which might result in a forfeiture for the benefit of the heirs in general.

The clause is equivalent to a devise or bequest of all the residue of his estate to Nathaniel Gilman, *upon the terms, or in the manner following*, that is to say, that he shall take only interest or income of the money and stocks, keeping them separate during his life; and that the principal shall, at his decease, be divided among his children, in such proportion as he shall direct; the rest of the residue being intended to be absolutely at his ownership and disposal.

This seems to us to be a sound exposition of this provision of the will, and according to what must have been the intention of the testator, as drawn from its entire contents.

Nathaniel Gilman then was residuary legatee, absolutely; and he had also an interest for life in the money and stocks, the principal of which is to be distributed, on his decease, among his children. Of course the heirs have no conditional interest in the residuum.

Have the heirs any contingent interest arising in any other way from the provisions of this will?

There is in the will a bequest of $1000, to build a fence around the meeting house, provided a union of the two parishes takes place in the lifetime of either of the executors, and not otherwise. If this does not take place it falls into the residuum. The title to this $1000 did not vest

absolutely in the residuary legatee, on the giving of the bond, and yet it can form no objection to taking a bond of this character.

If the condition is complied with, the bond secures it according to the bequest; if not, the residuary legatee takes it. 2 *Ves. Sen'r.* 285, *Jackson* vs. *Kelly*; 4 *Ves.* 802, *Kennell* vs. *Abbot*; 8 *Ves.* 25, *Cambridge* vs. *Row*; 15 *Ves.* 589; 2 *Williams on Exrs.* 895; 1 *Rob. on Wills* 444.

Another question suggests itself. Can the children of Nathaniel Gilman take any thing by this will, except through an appointment by their father? If they cannot, and he has failed, or shall fail to make an apportionment, then for want of an execution of the power, the intended bounty to them might fail, the legacy lapse, and the heirs have an interest in that way,—for this cannot fall into the residuum. The father has his lifetime in which to execute the power, and cannot take the principal to himself under the will. To hold that if he made no apportionment it would fall into the residuum, would be to hold that his neglect to carry into effect the intention of the testator would vest the property absolutely in himself.

It is evident that it was not intended for him, and equally evident that it was not intended to go to the heirs of the testator.

The authorities show that the property will pass to the children without an apportionment by the father; and in such case they will take equal portions. 1 *Atk.* 469, *Harding* vs. *Glynn*; 4 *Ves.* 709; 5 *ditto* 495; 8 *ditto* 561, *Brown* vs. *Higgs*; 3 *Ves. & Beance* 198, *Birch* vs. *Wade*; 1 *Ves. Jun.* 149; 1 *Taunt.* 289; 9 *Ves.* 319, *Cruwys* vs. *Colman*.

There is a distinction between a mere power, and a power coupled with a trust. If it is a mere power of appointment, nothing vests until the power is executed. If a trust is created, the beneficial interest vests in the objects of the trust, subject to be devested by the execution of the power.

In this case the legacy vested in the children, subject to the right of the father to apportion it among them.

All the cases seem to admit that where the intention appears, as in this case, to give to them absolutely, it constitutes a trust. 2 *Ves. Sen'r.* 61, *Duke of Marlborough* vs. *Godolphin ;* 1 *Ves. Jr.* 270, *Bull* vs. *Vardy.*

In the view we have taken of the case we have not found it necessary to decide whether, in case the heirs at law had had a contingent interest this bond might not have been a lawful obligation, and effectual for their benefit, so that they could by virtue of it have compelled the payment of whatever might have accrued to them.

Another question has been considered. The interest of the children is of uncertain amount. Does that prevent the judge of probate from taking a bond of this character ? Would it render the clause in the statute providing for bonds of this description inoperative, in such case, and this bond void ?

There might be a convenience to them in having an inventory, so far as their interest extends, and an account settled. But this is not enough. They take through the will, and must take according to the manner provided by it.

The testator has not by the will provided for an inventory or an account in the probate office. Do the rules of law require it in such case ?

In 5 *Johns. C. R.* 349, *Westcott* vs. *Cady,* the Chancellor held that the legatee in remainder, after an estate for life, might call upon the legatee for life for an inventory of the property devised, to be filed, and so are other authorities. 1 *P. Wms.* 6, *note ;* 3 *ditto* 336 ; 5 *N. H. Rep.* 327.

But it is to be noted that this is not an inventory of the estate generally, but only of that part in which the legatee in remainder has an interest. 1 *P. Wms.* 6, *Shirley* vs. *Ferrers, in note.* And according to the authorities it is not the duty of the executor to make such inventory, but the duty of the legatee for life. 3 *P. Wms.*, *Slanning* vs.

*Style*, where the widow who was to sign the inventory was not executrix.

If this be so, that such inventory is to be partial only, and it is the duty of the legatee to make it, then this case can furnish no objection against the bond given in this case; for although the legatee for life is here executor also, the duty of making the inventory is not one which devolves upon him as executor, and it cannot be held that it thereby became the duty of the judge to take a bond which should compel an inventory of the whole, and a settlement in a different mode of the whole estate.

Farther—this bond requires the principal to discharge the trust of executor, agreeably to the tenor and effect of the will and the rules and directions of law, relative to the duty of said office and trust; and although the statute speaks of a bond to pay the debts and legacies only, we see no objection to this clause, in a bond under the statute, in connexion with a clause to pay debts and legacies; and if none, it binds him to do generally all things which devolve upon him as executor; and if making out an inventory of the trust estate was one of those duties, it is provided for.

Whether this bond secures the interest of the children of Nathaniel Gilman, or not, is a question not involved in this case. If it does not, it is because the testator gave in such a manner that no bond was required of the executor to secure that interest; and if so, a bond in common form to return an inventory, &c., which it is contended ought to have been taken, would not have enured to their benefit.

*Judgment affirmed.*